IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| IN THE MATTER OF JANE DOE, a minor, by and through her mother, GERI BACON,<br><br>*Plaintiff*,<br>v.<br><br>FARM BUREAU PROPERTY & CASUALTY INSURANCE COMPANY, formerly known as FARM BUREAU MUTUAL INSURANCE COMPANY, and DOES 1 through 10, inclusive,<br><br>*Defendants*. | **MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br><br>Case No. 2:16-cv-00877-JNP-EJF<br><br>District Judge Jill N. Parrish |

Before the Court is Plaintiff's Motion for Partial Summary Judgment on First Cause of Action for Breach of Contract (ECF No. 28) and Defendant's Motion for Summary Judgment (ECF No. 31). For the reasons set forth below, Defendant's motion is GRANTED and Plaintiff's motion is DENIED AS MOOT.

## I. INTRODUCTION

This is an insurance case. Plaintiff Jane Doe was sexually abused by Neil Pace. She sued Mr. Pace for negligence, among other things. Mr. Pace sought indemnification from his insurer, Defendant Farm Bureau Property and Casualty Insurance Company ("Farm Bureau"). But Farm Bureau denied coverage on the grounds that Mr. Pace's insurance policies excluded coverage for claims arising out of sexual abuse or molestation. Mr. Pace paid for his own defense and settled the lawsuit. Mr. Pace admitted to sexually abusing Jane and agreed to submit the issue of damages to arbitration. But Mr. Pace and Jane stipulated that Mr. Pace's personal liability would

be capped at $50,000, despite the fact that Mr. Pace owned over $1.5 million in assets. Simultaneously, Mr. Pace assigned his rights under his insurance policies to Jane.

Neither Mr. Pace nor Jane appeared at the arbitration. The arbitrator considered a single expert report and awarded Jane $4 million in damages. The arbitration award was reduced to $3.95 million due to a $50,000 "credit" for the amount that Pace had agreed to pay. The $3.95 million arbitration award was then converted into a judgment against Pace, even though he was personally liable for only $50,000. Jane then sued Farm Bureau for breach of contract and breach of the implied covenant of good faith and fair dealing. Farm Bureau has moved for summary judgment on the grounds that its decision to deny coverage was proper. The Court agrees and therefore grants Farm Bureau's motion for summary judgment and denies as moot Jane's motion for partial summary judgment.

## II. UNDISPUTED FACTS

### A. THE UNDERLYING LAWSUIT

In October 2008, Geri Bacon and her daughter Jane Doe began living at the home of Neil and Alberta Pace. Between October 2008 and July 2009, Mr. Pace repeatedly engaged in lewd conduct with Jane. When Ms. Bacon grew suspicious of Mr. Pace's conduct, she and Jane were evicted from the Pace home.

On July 19, 2012, Ms. Bacon, on behalf of Jane, filed a lawsuit against Mr. and Mrs. Pace (the "Underlying Lawsuit"). The complaint from the Underlying Lawsuit (the "Underlying Complaint") alleged three causes of action: (1) childhood sexual abuse (against Mr. and Mrs. Pace); (2) negligence (against Mr. and Mrs. Pace); and (3) wrongful eviction (against Mrs. Pace). The relevant portions of the Underlying Complaint are set forth below:

## FACTUAL ALLEGATIONS

5.  In or about October, 2008, plaintiffs became tenants at a home owned by Neil and Alberta Pace and where Neil and Alberta Pace also resided. Between October, 2008 and July, 2009 defendant, Neil Pace, repeatedly sexually abused Jane Doe. Defendant, Alberta Pace, had knowledge that her husband, Neil Pace, was sexually abusing Jane Doe and assisted Neil Pace with his acts of sexual abuse. The abuse included the showing of child pornography, unwanted stroking, groping, grabbing, penetrating and molesting Jane Doe in a painful and threatening manner, with the intent to cause harm and severe bodily injury.

6.  Neil and Alberta Pace would watch Jane Doe while her mother was away from the home. Neil Pace accomplished his sexual abuse of plaintiff by using his position of authority over Jane Doe to manipulate her and by emotionally and physically intimidating her. This intimidation had a coercive effect on plaintiff, such that she remained in great fear of Neil Pace.

7.  On or about August 1, 2007, Plaintiffs commenced living at the home of Neil and Alberta Pace. Plaintiffs became the Pace's tenants. Rent was paid through work Geri Bacon did for the Pace's [sic] at their discretion. On or about July 3, 2009, after the defendants suspected Geri Bacon may have become suspicious of Neil Pace's conduct towards her daughter, and in retaliation therefore [sic], the Plaintiffs' [sic] were immediately evicted from their tenancy at defendants [sic] home, without any cause or notice, which required Plaintiffs to seek shelter and live in a tent that night and thereafter.

8.  As a proximate result of the unlawful and intentional sexual abuse of Jane Doe by defendants, she has sustained physical and mental injuries and has incurred general pain and suffering.

9.  As a proximate result of the wrongful and retaliatory eviction by Alberta Pace, Geri Bacon and Jane Doe have suffered emotional distress, lost their prospective tenancy and have suffered general damages.

. . .

### FIRST CAUSE OF ACTION
(Childhood Sexual Abuse – All Defendants)

11.  Plaintiffs incorporate all of the allegations in the preceding paragraphs into their first cause of action and further allege as follows:

12.  Defendants' conduct was intentional and constitutes childhood sexual abuse.

13.  As a direct and legal result of the acts of defendants, as alleged herein, plaintiff, Jane Doe, suffered injuries including, but not limited to, physical

and mental pain and suffering, physical injuries, past and future costs of medical care and treatment, future loss of earning capacity, in an amount not yet ascertained, but which exceeds the minimum jurisdictional limits of this court.

14. In committing the acts described herein, defendants acted with malice, oppression and fraud, justifying an award of punitive damages against each of them.

## SECOND CAUSE OF ACTION
(Negligence – All Defendants)

15. As the landlords to Plaintiffs, Neil and Alberta Pace owed Jane Doe a duty of care. By committing the acts alleged herein defendants breached that duty of care.

16. As a direct and legal result of the acts of the negligence of defendants, as alleged herein, plaintiff, Jane Doe, suffered injuries including, but not limited to, physical and mental pain and suffering, physical injuries, past and future costs of medical care and treatment, future loss of earning capacity, in an amount not yet ascertained, but which exceeds the minimum jurisdictional limits of this court.

### B. THE FARM BUREAU INSURANCE POLICIES

Farm Bureau issued two policies to Mr. Pace covering the period in which the factual allegations forming the basis the Underlying Complaint occurred. The policies are titled the "Farm Bureau Member's Choice" ("Member's Choice Policy") and the "Personal Package Policy – Utah" ("Personal Package Policy") (collectively, the "Policies"). The relevant provisions of the Policies are identical in almost all respects.[1]

The General Sections of the Policies contain the following pertinent definitions:

**"Arising Out Of"**
Originating from, growing out of or flowing from, and requires only that there be some causal relationship between the loss, injury or damage and the activity or event.

---

[1] The only difference is how certain provisions are formatted. The provisions set forth below are consistent with the formatting in the Member's Choice Policy. The Court has indicated in footnotes the differences in formatting between the Policies, but such differences have no effect on the substance of the provisions or the Court's analysis.

> **"Damages"**
> A. The amount required to compensate claimants for loss, injury or detriment for which an "insured" is legally liable. "Damages" includes prejudgment interest the court requires the "insured" to pay. "Damages" do not include payment of fines, penalties, or the costs of complying with injunctive or equitable relief.
> B. The amount of "damages" is:
>    1. Negotiated by us with the claimant; or
>    2. Established by adjudication (lawsuit), arbitration, or a compromise settlement to which we have previously agreed in writing; and
>    3. Shall be reduced by any recoveries or salvages which are collected by the claimant.[2]

The General Sections of the Policies also provides:

> **Exclusions**[3]
> Your policy provides extensive property and liability coverage. However, no policy can provide coverage for all exposures.
>
> While each section and module may have exclusions which apply to a specific type of property, coverage or exposure, the following exclusions apply to all sections and modules. These exclusions apply regardless of any other cause or event contributing concurrently or in any sequence to the loss.[4]
>
> These exclusions apply regardless of whether the excluded cause or event is a direct or indirect cause of loss.

The General Sections of the Policies include the following relevant exclusion:

> **Molestation or Abuse**
> There is no coverage for any "damages" or "medical expenses" "arising out of" any sexual abuse or molestation, harassment, corporal punishment or physical or mental abuse.

Both Policies also contain Business Liability Modules that modify the Molestation and Abuse exclusions in the General Sections as follows:

---

[2] The "Damages" definition in the Personal Package Policy uses bullets as opposed to numbers to identify the subparts defining the amount of damages. And the Personal Package Policy omits the letters A and B that identify the paragraphs.

[3] "Exclusions" is in all caps in the Personal Package Policy.

[4] This sentence is set forth in a separate paragraph in the Personal Package Policy.

5

**Molestation or Abuse**
The Molestation or Abuse exclusion of the General Section is amended to include the following: There is no coverage for "damages" "arising out of" the negligent:
A. Employment;
B. Investigation;
C. Supervision;
D. Reporting or failure to report to the proper authorities; or
E. Retention;
of a "person" for whom any "insured" is or was legally responsible and whose conduct would be excluded from coverage by the actual or threatened sexual molestation or harassment, corporal punishment or physical or mental abuse of any "person" while in the care or custody of any "insured."[5]

### C. FARM BUREAU DENIES COVERAGE

Mr. and Mrs. Pace notified Farm Bureau of the Underlying Lawsuit on February 28, 2013, over six months after the Underlying Lawsuit was filed and more than four years after the alleged sexual abuse. After receiving notice, Farm Bureau began investigating, focusing on whether it had a duty to defend.[6] After reviewing the Policies and the Underlying Complaint, Farm Bureau sent Mr. and Mrs. Pace a letter explaining that neither of the Policies provided coverage for the Underlying Lawsuit. With respect to the negligence cause of action, which is at issue in this case, Farm Bureau explained that "negligence is excluded by the 'Intentional Acts' exclusion[,] and as the negligence was due to the causation of sexual abuse[,] the 'Molestation and Abuse' exclusion applies."

---

[5] The Personal Package Policy uses bullets as opposed to letters to identify the various subparts.

[6] The Court includes the following facts for background only as they are not material to the Court's analysis. In internal emails, a Farm Bureau claims consultant stated, "We will need to carefully review negligence count to determine if we have a duty to defend here." Farm Bureau's claims notes state: "Appears [claims consultant] wants to get [attorney] involved and defend under Reservation of Rights for NEGLIGENCE Cause of Action. Exclusions apply for the child sexual abuse charges but the Negligence cause of action could be related to the 'Intentional Acts' of our insured and subject to exclusion as well." Farm Bureau's "Loss Description" provides that "[a]s landlords to plaintiff Jane Doe, only damages plead [sic] in this cause of action include physical mental pain and suffering, physical injuries etc. NO Mention of the sexual assault or battery." The "Loss Description" UPDATE section also provides, "Found a Utah case, where duty to defend on negligence counts may have coverage."

### D. RESOLUTION OF THE UNDERLYING LAWSUIT

Mrs. Pace was eventually dismissed from the Underlying Lawsuit. Mr. Pace agreed to submit the Underlying Lawsuit to arbitration and agreed to pay $50,000 as a credit against any verdict rendered by the arbitrator. Mr. Pace and Jane agreed that personal liability would be capped at $50,000, despite the fact that Mr. Pace owned over $1.5 million in assets. Simultaneously, Mr. Pace assigned his rights under the Policies to Jane.[7]

Neither Mr. Pace nor Jane appeared at the arbitration. The arbitrator considered a single expert report and awarded Jane $4 million in damages. Mr. Pace and Jane then advised the court in the Underlying Lawsuit that the matter had been resolved, and they stipulated that the court should enter judgment against Mr. Pace and in favor of Jane in the amount of $3.95 million ($4 million less the $50,000 that Mr. Pace already agreed to pay). The court did so.

### III.   DISCUSSION

#### A. MOTION STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has met this burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To do so, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

---

[7] Mrs. Pace was not a party to the assignment.

When the nonmoving party bears the burden of proof at trial on a dispositive issue, that party must "go beyond the pleadings" and "designate specific facts" so as to "make a showing sufficient to establish the existence of an essential element to that party's case." *Celotex*, 477 U.S. at 322. "The plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* Thus, summary judgment is not a "disfavored procedural shortcut" but rather "an integral part of the Federal Rules as a whole" that is designed "to secure the just, speedy and inexpensive determination of every action." *Id.* at 327.

### B. WHETHER THE POLICIES PROVIDED COVERAGE

The Court first addresses whether the Policies provided coverage for the Underlying Lawsuit. If the Policies did not provide coverage, Jane's breach of contract claim fails as a matter of law. Jane concedes that the Policies did not provide coverage for the first or third causes of action. But she contends that the Policies potentially covered the negligence cause of action. Specifically, Jane asserts that Farm Bureau had a duty to defend the negligence cause of action because the Policies did not unambiguously preclude coverage for unintentional injuries. Farm Bureau argues that the negligence cause of action was not covered because the Policies unambiguously preclude coverage for claims arising out of sexual abuse or molestation. The Court agrees with Farm Bureau.

"[A]n insurer's coverage liability is determined by comparing the allegations within the four corners of the complaint to the language contained in the four corners of the insurance policy." *Headwaters Res., Inc. v. Ill. Union Ins. Co.*, 770 F.3d 885, 891 (10th Cir. 2014) (citing *Basic Res., LLC v. Admiral Ins. Co.*, 297 P.3d 578, 580 (Utah 2013)). "If the language found in the collective 'eight corners' of these documents clearly and unambiguously indicates that a duty

8

to defend does or does not exist, the analysis is complete." *Equine Assisted Growth & Learning Ass'n v. Carolina Cas. Ins. Co.*, 266 P.3d 733, 737 (Utah 2011).

Examining the language of an insurance policy is "a matter of contract interpretation because an insurance policy is 'merely a contract between the insured and the insurer.'" *Headwater Res.*, 770 F.3d at 891 (quoting *Alf v. State Farm Fire & Cas. Co.*, 850 P.2d 1272, 1274 (Utah 1993)). "Like other contracts, an insurance policy is interpreted to give effect to the intent of the parties as expressed by the plain language of the instrument itself." *Id.* An insurer is permitted to "limit or modify its obligations to provide coverage through explicit exclusions and exclusionary language." *Id.* But such exclusions must "clearly and unmistakably communicate[] to the insured the specific circumstances under which the expected coverage will not be provided." *Alf*, 850 P.2d at 1275.

Here, the Molestation or Abuse exclusions unambiguously preclude coverage. The exclusions provide that "[t]here is no coverage for any 'damages' or 'medical expenses' 'arising out of' any sexual abuse or molestation, harassment, corporal punishment or physical or mental abuse." The Policies define "arising out of" as "[o]riginating from, growing out of or flowing from, and *require[] only that there be some causal relationship between the loss, injury or damage and the activity or event*." (emphasis added).[8] With these definitions, the Court turns to the allegations in the Underlying Complaint to determine whether the negligence cause of action arose out of sexual abuse or molestation.

The negligence cause of action consists of only two paragraphs and provides, in relevant part: "As the landlords to Plaintiffs, Neil and Alberta Pace owed Jane Doe a duty of care. *By

---

[8] The Utah Supreme Court has defined "arising out of" in a similar manner, explaining that the phrase is commonly understood to mean "originating from, growing out of, or flowing from, and [it] require[s] only that there be some causal relationship . . . ." *Nat'l Farmers Union Prop. & Cas. Co. v. W. Cas. & Sur. Co.*, 577 P.2d 961, 963 (Utah 1978).

9

*committing the acts alleged herein defendants breached that duty of care*." (emphasis added). Thus, the Court looks to the acts alleged in the complaint to determine whether the negligence cause of action arose out of sexual abuse or molestation:

> 5. In or about October, 2008, plaintiffs became tenants at a home owned by Neil and Alberta Pace and where Neil and Alberta Pace also resided. Between October, 2008 and July, 2009 defendant, Neil Pace, *repeatedly sexually abused Jane Doe*. Defendant, Alberta Pace, had knowledge that her husband, Neil Pace, was sexually abusing Jane Doe and assisted Neil Pace with his acts of sexual abuse. *The abuse included* the showing of child pornography, unwanted stroking, groping, grabbing, penetrating and molesting Jane Doe in a painful and threatening manner, with the intent to cause harm and severe bodily injury.
>
> 6. Neil and Alberta Pace would watch Jane Doe while her mother was away from the home. *Neil Pace accomplished his sexual abuse of plaintiff* by using his position of authority over Jane Doe to manipulate her and by emotionally and physically intimidating her. This intimidation had a coercive effect on plaintiff, such that she remained in great fear of Neil Pace.
>
> . . .
>
> 8. *As a proximate result of the unlawful and intentional sexual abuse of Jane Doe by defendants*, she has sustained physical and mental injuries and has incurred general pain and suffering.

(emphasis added). There are no acts alleged that are wholly independent of the alleged sexual abuse. In fact, the negligence cause of action contains no factual allegations at all. Rather, it makes reference to the underlying sexual abuse allegations and then affixes to them a negligence label. Thus, the alleged acts that form the basis of the negligence cause of action arose out of the alleged sexual abuse of Jane. Accordingly, the Court holds that a comparison of the language in the Underlying Complaint with the language of the Policies unambiguously shows that there was no coverage for the negligence cause of action.

Despite this straightforward analysis, Jane contends that Farm Bureau was required to provide coverage based on the Utah Supreme Court case of *Benjamin v. Amica Mutual Insurance Co.*, 140 P.3d 1210 (Utah 2006) (Parrish, J.). But the facts of *Benjamin* are distinguishable.

There, the policy excluded from coverage "bodily injury . . . [w]hich is expected or intended by the insured." *Id.* at 1214. Based on this exclusion, the court concluded that the insured owed a duty to defend a negligent infliction of emotional distress claim that was based on allegations of sexual assault. *Id.* at 1214-15. Notably, the policy lacked a sexual misconduct exclusion, unlike the Policies in the case at hand. *Id.* at 1218. Indeed, the court noted that a sexual misconduct exclusion would have barred coverage.[9] *Id.* As such, Jane's reliance on *Benjamin* is misplaced, and in fact, the case supports the conclusion that there is no coverage in the case at hand.

In sum, a comparison of the language in the Underlying Complaint with the Molestation or Abuse exclusions leads to the conclusion that the Policies do not provide any coverage for the negligence cause of action. As such, Jane's breach of contract claim fails as a matter of law.

### C. WHETHER FARM BUREAU BREACHED THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

Under Utah law, the "obligation of good faith performance contemplates, at the very least, that the insurer will diligently investigate the facts to enable it to determine whether a claim is valid, will fairly evaluate the claim, and will thereafter act promptly and reasonably in rejecting or settling the claim." *Headwater Res.*, 770 F.3d at 890 (quoting *Beck v. Farmers Ins. Exch.*, 701 P.2d 795, 801 (Utah 1985)). But the implied covenant of good faith and fair dealing "cannot be construed . . . to establish new, independent rights or duties not agreed upon by the parties." *Brehany v. Nordstrom Inc.*, 812 P.2d 49, 55 (Utah 1991). Nor can it be used to "nullify

---

[9] As the Utah Supreme Court explained: "Some policies contain express sexual misconduct exclusions, such as the one at issue in *Lopez v. New Mexico Public Schools Insurance Authority*, 117 N.M. 207, 870 P.2d 745, 747 (1994), which stated, 'Sexual or physical abuse or molestation of any person . . . *does not constitute personal injury* within the terms of this policy and as such *any claim arising, directly or indirectly, from the aforementioned is excluded*" (emphasis added). No such exclusion, however, is present in the [policy]. Instead, [the policy] broadly indicates coverage for 'personal injury' resulting from an 'invasion of privacy' or 'false imprisonment.'" *Benjamin*, 140 P.2d at 1218.

a right granted by contract to one of the parties or to require a party vested with a contract right to exercise that right in a manner contrary to that party's legitimate self-interest." *Id.*

Jane argues that the claim for breach of the implied covenant of good faith and fair dealing should survive because the Policies potentially provided coverage. Essentially, Jane asks the Court to ignore the Molestation or Abuse exclusions. But Utah law prohibits courts from using the implied covenant of good faith and fair dealing to "nullify a right granted by contract to one of the parties." *Id.* Accordingly, Jane's claim for breach of the implied covenant of good faith and fair dealing also fails as a matter of law.

## IV. CONCLUSION AND ORDER

For the reasons set forth above, the Court GRANTS Defendant's Motion for Summary Judgment (ECF No. 31) and DENIES AS MOOT Plaintiff's Motion for Partial Summary Judgment on First Cause of Action for Breach of Contract (ECF No. 28). The Molestation or Abuse exclusions unambiguously bar coverage for the claims in the Underlying Complaint. Accordingly, it is ORDERED that Defendants are entitled to judgment in their favor on Plaintiff's claims for (1) breach of contract and (2) breach of the implied covenant of good faith and fair dealing. The clerk of the court is directed to close the case.

Signed November 1, 2017

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge